IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Case No.: RDB-08-0098 |
| JOSEPH POOLE | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT JOSEPH W. POOLE'S MEMORANDUM OF
<u>PROPOSED FINDINGS OF FACT AND STATEMENTS OF LAW</u>**

Defendant Joseph W. Poole ("Mr. Poole"), pursuant to this Court's request and by and through his undersigned counsel, hereby submits these proposed findings of fact and statements of law in support of his request that the Court find him Not Guilty on all charges.

**<u>FINDINGS OF FACT</u>**

1.   Mr. Poole met Stilianos Mavroulis ("Mr. Mavroulis") prior to Mr. Mavroulis' involvement in the mortgage industry; shortly thereafter began preparing Mr. Mavroulis' individual tax returns.

2.   Mr. Poole, in conjunction with Bay Area Accounting & Management ("BAAM"), acted as the outside accountant for Fidelity Home Mortgage Corporation ("FHMC") and the personal accountant for Mr. and Mrs. Mavroulis and their son Vasilios. His representation included individual and business tax return preparation, audits of business financial statements and preparation of compiled personal financial statements.

3.   Mr. Poole's relationship with Mr. Mavroulis was purely professional; they did not socialize. While Mr. Poole knew that FHMC was paying personal expenses for the Mavroulis family, he had no detailed knowledge regarding these expenditures. He believed they lived modestly and he was unaware that the family went to Greece in 2002.

4. Mr. Mavroulis and FHMC represented less than 8% of BAAM's business. Mr. Poole was extremely busy and had insufficient time to adequately prepare the FHMC or Mavroulis tax returns; he worked no more than seventy-five hours in any of the years on these accounts. BAAM had insufficient staff to service FHMC as it grew. During the years at issue, BAAM prepared the employment tax returns for FHMC, including the Forms W-2, but Mr. Poole was not involved in this process.

5. Mr. Poole and an associate installed the QuickBooks software for FHMC in or around 1998. They explained the software to Mr. Mavroulis and Kyriakos Mavroulis ("Kirk")[1]. At a later point, Mr. Poole and his wife, Donna, met with Mrs. Mavroulis at her request and explained how she should separate personal and business expenses paid by FHMC.

6. Mr. Poole relied on the accounting staff at FHMC to properly characterize and book the personal expenses of the Mavroulis family. Mr. Poole did not review the credit card statements as part of his preparation of the tax returns for FHMC or Mr. and Mrs. Mavroulis.

7. Mr. Mavroulis spoke with Mr. Poole about FHMC trading stock as a business activity. Mr. Poole believed that such activity could be related to the business. When Mr. Poole reviewed FHMC's documents to prepare its tax return, he learned from the Form 1099 that the E*Trade account had been opened in Mr. Mavroulis' personal name, rather than FHMC. As a result, Mr. Poole reported the E*Trade activity on Mr. Mavroulis' personal return.

8. Mr. Mavroulis spoke with Mr. Poole about Fidelity Promotions and Mr. Poole believed that the activity would be a trade or business.

9. The payments to the Mavroulis children in the aggregate amount of $291,925 were not deducted as business expenses by FHMC. As a result, FHMC income was not improperly

---

[1] Kyriaos Mavroulis is referred to as Kirk rather than Mr. Mavroulis to differentiate Kyriaos Mavroulis from Stilianos Mavroulis. No disrespect is intended.

reduced on account of those payments, the net income of FHMC – including the amounts paid to the children – flowed through onto Mr. Mavroulis' personal returns, and no additional tax is due on those funds.

10. The transfers to E*Trade in the aggregate amount of $290,606 were not deducted as business expenses by FHMC.  As a result, FHMC income was not improperly reduced on account of those payments, the net income of FHMC – including the amounts transferred to E*Trade – flowed through onto Mr. Mavroulis' personal returns, and no additional tax is due on those funds.

11. Transfers to Fidelity Promotions in the aggregate amount of $20,000 were not deducted as business expenses by FHMC.  As a result, FHMC income was not improperly reduced on account of those payments, the net income of FHMC – including the amounts transferred to Fidelity Promotions – flowed through onto Mr. Mavroulis' personal returns, and no additional tax is due on those funds.

12. Payments for auto expenses characterized by the Government as personal expenses in the aggregate amount of $65,584 were not deducted as business expenses by FHMC. As a result, FHMC income was not improperly reduced on account of those payments, the net income of FHMC – including the aforementioned auto expenses – flowed through onto Mr. Mavroulis' personal returns, and no additional tax is due on those funds.

13. Payments for trips to Greece characterized by the Government as personal expenses in the aggregate amount of $14,697 were not deducted as business expenses by FHMC. As a result, FHMC income was not improperly reduced on account of those payments, the net income of FHMC – including the aforementioned funds used for the trips to Greece – flowed through onto Mr. Mavroulis' personal returns, and no additional tax is due on those funds.

14.     Payments for educational expenses characterized by the Government as personal expenses in the aggregate amount of $19,094 were not deducted as business expenses by FHMC. As a result, FHMC income was not improperly reduced on account of those payments, the net income of FHMC – including the aforementioned funds used for educational expenses – flowed through onto Mr. Mavroulis' personal returns, and no additional tax is due on those funds.

15.     FHMC paid the mortgage and other expenses related to 1012 North Point Road. Mr. Poole treated these payments as rent of FHMC, the tenant of the building. As the tenant, FHMC was entitled to claim a deduction of rent. A deduction for payments of expenses and losses with respect to 1012 North Point Road property is not barred by related party rules under the Internal Revenue Code.

16.     Mr. Poole added $120,000 of officer compensation to the FHMC Forms 1120S and financial statements based on his estimate of Mr. Mavroulis' income in 1999 and 2001. While FHMC paid personal expenses on behalf of Mr. Mavroulis and his family, Mr. Mavroulis did not receive an additional $120,000 in officer compensation in the years at issue.

17.     Mr. Mavroulis reported on his Form 1040 an aggregate of approximately $798,000 in income from FHMC between 1998 and 2003. This income is added to Mr. Mavroulis' basis in his FHMC stock, and allows for tax-free shareholder draws up to that basis.

18.     When Mr. Poole learned of allegations that the Mavroulis and FHMC tax returns were incomplete, Mr. Poole asked Mr. Mavroulis for additional information to analyze the returns and then prepared amended returns for Mr. Mavroulis to file. Mr. Mavroulis did not file these returns.

19.     Mr. Poole voluntarily met with the IRS Special Agents and/or Assistant U.S. Attorneys on three separate occasions, answering all questions to the best of his ability.

20.     Mr. Poole maintained a good faith, yet erroneous belief that the basis rules that apply to partnerships under the Internal Revenue Code also applied to Subchapter S corporations.  As a result, and due to Mr. Mavroulis' personal guarantee of FHMC's warehouse credit lines, Mr. Poole believed that Mr. Mavroulis had sufficient basis to allow for shareholder draws without additional taxable income. Mr. Poole did not discuss the basis issue with Mr. Mavroulis.

21.     Mr. Poole advised Mr. Mavroulis that he was required to pay taxes on the profits of FHMC but not necessarily on shareholder draws.  Mr. Poole believed this to be an accurate statement of the law at the time he made these statements to Mr. Mavroulis.

22.     During the years at issue, Mr. Poole was not competent to prepare audited financial statements.  While he believed he could handle the task, he did not have the requisite knowledge or training to conduct the audits or prepare the financial statements in accordance with professional standards.  He was not aware of and therefore did not comply with the Government Auditing Standards, known as the "Yellow Book."

23.     FHMC QuickBooks for the years at issue are voluminous and fragmented.  The personal expenses paid by FHMC were booked to various accounts by the FHMC accounting staff. Therefore, a "double-click" of the shareholder draw account would not provide the information to accomplish an accurate computation of shareholder draws.

24.     The FHMC accounting staff entered the financial information into Quickbokos and frequently created new accounts as expenses were paid.  The accounting staff was supervised by Kirk and included qualified personnel.  The determination of how and what expenses were recorded and classified were made by FHMC employees, not Mr. Poole.

25.     FHMC provided Mr. Poole with a quarterly backup of QuickBooks, which Mr. Poole and BAAM used to prepare adjusting journal entries, employment tax returns, financial statements and income tax returns.

26.     Mr. Poole learned of an investigation in May, 2004.  In later emails Mr. Poole maintains that it was his intention to prepare accurate tax returns and that the tax returns are in fact accurate. Mr. Poole stated "… any way I stand by my returns." Government Exhibit 120.

27.     Mr. Hardester manipulated Mr. Poole into preparing a "what if" 2001 Form 1040 for Mr. and Mrs. Mavroulis, which Mr. Hardester then used to convince the Government to initiate an investigation. Many of Mr. Hardester's allegations were proved false during the investigation. The Government did not call Mr. Hardester to testify.

28.     Mr. Poole did not agree or act in concert with Mr. Mavroulis or Kirk to defraud the United States or to prepare and file false tax returns.

29.     Mr. Poole does not accept the Government's characterization of all of the expenses listed on page 1 of Government's Exhibit 200. Mr. Poole acknowledges mistakes were made on the financial statements and returns. Mr. Poole did not knowingly or willfully prepare false returns.

## STATEMENTS OF LAW

A.     *Conspiracy*

To obtain a conviction as to the conspiracy count, the Government must establish beyond a reasonable doubt: (1) that an agreement existed, (2) that the conspirators committed an overt act in furtherance of the conspiracy, and (3) that the defendant intended to agree to the conspiracy and to defraud the United States. US v. Romer, 148 F.3d 359, 371 (4th Cir. 1998). Conspiracy to evade payment of federal taxes only exists when an objective of the agreement is to thwart efforts of the Internal Revenue Service (IRS) to determine and collect income taxes. *Id*.

This Court must acquit Mr. Poole because the Government failed to prove the existence of an agreement and that Mr. Poole conspired with Mr. Mavroulis to defraud the United States. The Court cannot infer the existence of an agreement or Mr. Poole's intention to join a conspiracy based solely on false returns. All elements of the offense must be proven by independent evidence. US v. McKee, 506 F.3d 225, 239 (3rd Cir. 2007); *quoting* US v. Adkinson, 158 F.3d 1147, 1155 (11th Cir. 1998).

There is no evidence that Mr. Poole agreed with Mr. Mavroulis to file false returns to thwart efforts of the IRS to determine and collect income taxes. *See* Adkinson, at 1153 (vacating convictions where the Government "was unable to point to one conversation between the defendants regarding taxes, much less demonstrating an intent to avoid them"); *see also* US v. Pappathanasi, 383 F.Supp.2d 289, 296 (D.Mass. 2005) (granting Motion for Acquittal where Government failed to introduce evidence of conversations between defendants or others regarding scheme to evade taxes or other evidence of agreement or meeting of the minds to evade payment of taxes)

A conspiracy does not exist merely from the happening of an event; more is required. Pappathanasi, at 291, *citing* Adkinson, 158 F.3d 1147, 1155 (11th Cir. 1998); *see also* US v. McKee, 506 F.3rd 225, 239 (3rd Cir. 2008) (though Government may establish existence of an agreement using circumstantial evidence, proof of filing of false or incomplete return is generally insufficient to support a conviction for conspiracy); US v. Klein, 247 F.2d 908, 916 (2nd Cir. 1957); *see also* U.S v. Thompson, 518 F.3d 832 (10th Cir. 2008). The Government must establish independent evidence of both the agreement as well as the intention to join the agreement. Pappathanasi, *supra*. In short, a conspiracy cannot be proven merely by evidence of the overt act and then asking the Court to infer the other two elements. "In a prosecution for conspiracy, it

is not sufficient for the Government to prove only that a defendant acted in a way that would have furthered the goals of a conspiracy if there was one." Pappathanasi, *supra*. Moreover, an agreement may only be inferred when there is evidence of a common scheme or unity of purpose between the alleged coconspirators. Adkinson, at 1154, *citing* Klein, at 918; McKee, at 239.

Here, there is no evidence of an agreement, or an intention by Mr. Poole to join any such conspiracy. The Government's focus upon the repeated errors by Mr. Poole does not achieve its aim. Mr. Poole's significant errors on the financial statements and tax returns are the result of his misunderstanding of the Subchapter S basis rules. This does not amount to a conspiracy.

      B.    *Aiding & Assisting*

To obtain a conviction under I.R.C. § 7206(2), the Government must prove the following elements beyond a reasonable doubt: "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." US v. Aramony, 88 F.3d 1369, 1382 (4th Cir. 1996), *quoting* US v. Salerno, 902 F.2d 1429, 1432 (9th Cir.1990). The Government must prove beyond a reasonable doubt that Mr. Poole acted voluntarily, deliberately and intentionally, as distinguished from accidentally, inadvertently or negligently, with the specific intent to aid and assist in the filing of a false tax return. SAND, FEDERAL JURY INSTRUCTIONS, Instruction 59-30 (2008); US v. Ausmus, 774 F.2d 722, 726 (6th Cir. 1985); *see* US v. Nealy, 729 F.2d 961, 961-964 (4th Cir. 1984) (defendant convicted of aiding and assisting in violation of 26 U.S.C. 7206(2) though did not actually prepare the tax returns; convicted because knowingly provided false information knowing that report would be used to compute unjustified tax deductions that resulted in a fraudulent tax return); *see also* US v. Abuhawwas,

8

215 Fed.Appx. 311 (4th Cir. 2007) (unpublished)[2], (defendant convicted of aiding and assisting in violation of 26 U.S.C. 7206(2); defendant willfully aided and assisted preparation of false return where repeatedly failed to provide accountant with necessary documentation for employees lacking social security numbers for quarterly 941 tax return).

Willfulness is to be determined by a subjective rather than an objective standard. US v. Hirschfeld, 964 F.2d 318, 322 (4th Cir. 1991), *citing* Cheek v. US, 498 U.S. 192, 111 S.Ct. 604, 610-12 (1991).

The Government also failed to establish Willful Blindness. There is simply no evidence that Mr. Poole recognized the likelihood of wrongdoing and nonetheless consciously refused to take basic investigatory steps. There is also no evidence that Mr. Poole was aware that his understanding of the tax laws was erroneous and that he conscientiously avoided obtaining actual knowledge of his obligations. *See generally* US v. Griffin, 524 F.3d 71, 77 (1st Cir. 2008); U.S. v. Fingado, 934 F.2d 1163, 1166 (10th Cir. 1991) and U.S. v. Whittington, 26 F.3d 456, 463 (4th Cir. 1994).  If the evidence indicates that a defendant purposely closed his eyes to avoid knowing what was taking place around him, then the finder of fact may impute the element of knowledge to the defendant. US v. Schnabel, 939 F.2d 197, 203-204 (4th Cir. 1991); *see also* US v. Mir, 525 F.3d 351, 358-359 (4th Cir. 2008); US v. Ruhe, 191 F.3d 376, 384-385 (4th Cir. 1999).

The Government has offered no proof that Mr. Poole willfully prepared tax returns that were fraudulent or false as to a material matter. Although mistakes were ultimately found in the tax returns, Mr. Poole prepared these tax returns, to the best of his ability, based on the law as he understood it, using the information that the accounting department of FHMC provided to him.

---

[2] A copy of this case is attached hereto pursuant to Local Rule 105(5).

In this case there is no such evidence. Mr. Poole believed he possessed accurate data and was preparing it properly. He did not intentionally avoid obtaining knowledge – he thought he had the requisite knowledge. This is not willful blindness and is not a crime.

### Conclusion

Mr. Poole must be acquitted as the Government has failed to prove each and every required element of the Counts beyond a reasonable doubt.

```
              /s/
```
ANDREW RADDING
RENEE BRONFÉIN ADES
Adelberg, Rudow, Dorf & Hendler, LLC
7 St. Paul Street, Suite 600
Baltimore, Maryland  21202
(410) 539-5195

*Attorneys for Defendant Joseph Poole*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **22nd** day of July, 2009, a copy of the foregoing Memorandum of Findings of Fact and Statements of Law were delivered, via electronic filing, to:

Jonathan Biran, AUSA
Office of the United States Attorney
36 S Charles St, Fourth Floor
Baltimore, MD 21201

```
              /s/
```
ANDREW RADDING