IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2009 JUL 24 P 3: 52

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| v. | * | |
| JOSEPH POOLE, | * | Criminal Action No.: RDB-08-0098 |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

In an Indictment that also contained tax fraud charges against Stilianos Mavroulis and

Kyriakos Mavroulis ("Mavroulis Defendants"),[1] Defendant Joseph Poole was charged with

conspiracy to defraud the Internal Revenue Service in violation of 18 U.S.C. § 371 (Count One)

and aiding and assisting in the filing of false tax returns in violation of 26 U.S.C. § 7206(2)

(Counts Six through Nine).  Specifically, Counts Six through Nine allege in part as follows:

| Count | Date Prepared | Tax Year | Material False Matters on Tax Return |
|---|---|---|---|
| 6 | 12/12/01 | 2000 | Line 39: taxable income reported was $0, when in fact the taxpayers had substantial unreported taxable income<br><br>Lines 65-67a: tax payments and refund claimed of $3,365, when in fact the taxpayers owed a substantial amount of income tax |

---

[1] Kyriakos Mavroulis pled guilty to a Superseding Information (Paper No. 71) and was sentenced on May 22, 2009, and Stilianos Mavroulis pled guilty to the charges contained in the Indictment and is scheduled to be sentenced on September 30, 2009.

| 7 | 4/11/03 | 2001 | Line 39: taxable income reported was $0, when in fact the taxpayers had substantial additional unreported taxable income<br><br>Lines 66-68a: tax payments and refund claimed of $3,410, when in fact the taxpayers owed a substantial amount of income tax |
|---|---------|------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 8 | 11/18/03 | 2002 | Line 41: taxable income reported as $47,365, when in fact the taxpayers had substantial additional unreported taxable income<br><br>Line 73: Amount of income tax owed reported as $3,292, when in fact the taxpayers owed a substantial additional amount of income tax |
| 9 | 10/14/04 | 2003 | Line 40: taxable income reported as $475,535, when in fact the taxpayers had substantial additional unreported taxable income.<br><br>Line 60: Income tax reported as $141,644, when in fact the taxpayers owed a substantial additional amount of income tax |

On December 1, 2008, this Court granted Defendant Poole's Motion for Severance (Paper No. 35), based in large part on the Supplemental Memorandum in Support of Motion to Sever Defendants (Paper No. 59) filed by Stilianos Mavroulis. In that submission, Stilianos Mavroulis attached an affidavit by Defendant Poole in which Defendant Poole stated that he would only waive his Fifth Amendment privilege to testify at the severed trial of the Mavroulis Defendants (and not at a joint trial), and that his testimony would be that, *inter alia*: (1) he taught the Mavroulis Defendants the accounting program QuickBooks; (2) he frequently answered questions about the characterization of expenses; (3) he prepared the financial statements and tax returns; and (4) he doesn't believe that the Mavroulis Defendants acted to intentionally defraud the government. For the reasons stated on the record at the motions hearing conducted on

November 26, 2008, this Court determined that the Defendants had met their burden under the test enunciated in *United States v. Parodi*, 703 F.2d 768 (4th Cir. 1983),[2] and consequently the Government's case against Defendant Poole was severed from the case against the Mavroulis Defendants.

On June 2, 2009, Defendant Poole waived his Seventh Amendment right to a jury (Paper No. 96), and the Government consented to proceeding with a bench trial (Paper No. 97). The bench trial of Defendant Poole commenced on Monday, July 13, 2009, and closing arguments were heard on Tuesday, July 21, 2009. The following day, the parties submitted, at the Court's request, proposed statements of law and findings of fact. By way of the accompanying Verdict, and for the reasons stated in this Memorandum Opinion, this Court finds Defendant Joseph Poole GUILTY as to the aiding and assisting in the filing of false tax returns charged in Counts Six through Nine, and NOT GUILTY as to the conspiracy to defraud the United States charged in Count One.

## STATEMENTS OF LAW

### I.    Aiding and Assisting

To obtain a conviction for aiding and assisting in the filing of false tax returns under 26

---

[2] Addressing a motion for severance based on the asserted need for a co-defendant's testimony, the Fourth Circuit in *Parodi* determined that a trial court must first determine whether the defendant has demonstrated: (1) a bona fide need for the testimony of his co-defendant; (2) a likelihood that the co-defendant would testify at a second trial and waive his Fifth Amendment privilege; (3) the substance of his co-defendant's testimony; and (4) the exculpatory nature and effect of such testimony." *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983). If such a showing is made, the trial court must then: (1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of the testimony; (3) pay close attention to judicial administration and economy; (4) give weight to the timeliness of the motion; and (5) consider the likelihood that the co-defendant's testimony could be impeached. *Id.*

U.S.C. § 7206(2), the government must prove the following elements beyond a reasonable doubt: "(1) the defendant aided, assisted, or otherwise caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996) (quoting *United States v. Salerno*, 902 F.2d 1429, 1432 (9th Cir. 1990)). The third element, which is the only element in serious dispute in this case, requires that the Government demonstrate beyond a reasonable doubt that the defendant acted voluntarily and intentionally—and by not mistake, accident, negligence or other innocent reason—with the specific intent to aid and assist in the filing of a false tax return. *See* Sand, Siffert, Loughlin, & Reiss, *Modern Federal Jury Instructions* P. 59.01, No. 58-9; P. 59.04, No. 59-30 [hereinafter *Jury Instructions*]. "The Supreme Court has repeatedly held that in order to make out a 'willful violation' of section 7206(2) the government must prove defendants acted with specific intent to defraud the government in the enforcement of its tax laws." *Salerno*, 902 F.2d at 1432 (citing several Supreme Court cases).

A factfinder may determine that a defendant acted willfully under section 7206(2) if the defendant acted with willful blindness, *i.e.* that the defendant "purposely closed his eyes to avoid knowing what was taking place around him." *United States v. Ruhe*, 191 F.3d 376, 384-85 (4th Cir. 1999). Willful blindness may be found when "the defendant asserts a lack of guilty knowledge but the evidence supports an inference of deliberate ignorance." *United States v. Abbas*, 74 F.3d 506, 513 (4th Cir. 1996). "In a tax case, a willful blindness instruction is warranted if the record supports a finding that the defendant was aware of a high probability that his understanding of the tax laws was erroneous and consciously avoided obtaining actual

4

knowledge of his obligations." *United States v. Dantzler*, 45 Fed. Appx. 259, 261 (4th Cir. 2002); *see also United States v. Whittington*, 26 F.3d 456, 463 (4th Cir. 1994) (holding that "the record need not contain direct evidence . . . that the defendant deliberately avoided knowledge of wrongdoing; all that is necessary is evidence from which the jury could infer deliberate avoidance of knowledge").

## II.    Conspiracy

The elements of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 are: (1) the existence of an agreement, (2) an overt act by a conspirator in furtherance of the agreement, and (3) an intent by the conspirators to agree to defraud the United States. *United States v. Gosselin Worldwide Moving, N.V.*, 411 F.3d 502, 516 (4th Cir. 2005). As to the first element, it is not necessary that the alleged members of the conspiracy entered into any express or formal agreement. Instead, the Government must demonstrate that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act. *See Jury Instructions*, P. 19.01, No. 19-4. In the context of a section 371 conspiracy, the Fourth Circuit has held that "[t]he existence of a tacit or mutual understanding between conspirators is sufficient evidence of a conspiratorial agreement. Proof of the agreement may be established by circumstantial evidence." *United States v. Cardwell*, 433 F.3d 378, 390 (4th Cir. 2005) (internal quotation marks omitted) (citing *United States v. Ellis*, 121 F.3d 908, 922 (4th Cir. 1997) and *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). As to the third element, "[f]raudulent intent may be inferred from the totality of the circumstances and need not be proven by direct evidence." *United States v. Ham*, 998 F.2d 1247, 1254 (4th Cir. 1993).

5

This Court, as the finder of fact, need not convict Defendant Poole of a conspiracy to defraud the United States even if it finds Defendant Poole guilty of aiding and assisting in the filing of false tax returns. It is well settled that a conspiracy requires an agreement, which is not a required element in proving an aiding and assisting charge. *See, e.g., United States v. Stozek*, 783 F.2d 891, 894 (9th Cir. 1986) (affirming a conviction on aiding and assisting the misapplication of bank funds, despite an acquittal on the conspiracy charge to do the same, because "[c]onspiracy requires proof of an agreement, which aiding and abetting does not"); *United States v. Arrington*, 719 F.2d 701, 705 (4th Cir. 1983) ("There were several obviously differing elements of proof necessary for conviction under the conspiracy and aiding and abetting counts of the indictment. Conspiracy requires proof of 'preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting.'" (citations omitted)); *United States v. Krogstad*, 576 F.2d 22, 29 (3d Cir. 1978) ("The cases are clear that one may cause another to commit a crime, . . . or aid and abet the commission of a crime, . . . without being a conspirator with the principal offender. There need be no agreement, express or tacit[,] between the principal offender and the aider and abettor, and indeed the principal offender need not even be aware that he was aided and abetted by another.").

## FINDINGS OF FACT

### I.    Facts Common To All Counts

Defendant Poole was licensed in Maryland as a CPA for a period of time prior to 1998, but was not licensed thereafter. Stilianos Mavroulis was the President and 100 percent owner of Fidelity Home Mortgage Corporation ("FHMC"), a Subchapter S corporation headquartered in Baltimore, Maryland. FHMC was a mortgage brokerage firm that, in 1999, shifted from being a

6

"retail" mortgage brokerage firm to primarily a "wholesale" mortgage brokerage firm. As a result, FHMC's business grew substantially—at one point FHMC operated in forty-five states and had hundreds of millions of dollars on its accounting books. Kyriakos Mavroulis is Stilianos Mavroulis's son, and he worked at FHMC as the head of its accounting department during the tax years in question. All members of Stilianos Mavroulis's immediate family, including his wife Elizabeth Mavroulis and their five children, worked at FHMC at various times during tax years 1998-2003. Except for Vasilios Mavroulis, the Mavroulis children were not on FHMC's payroll and did not receive W-2's or 1099's during their employment at FHMC.

Between January 1, 1998, and October 18, 2004, Defendant Poole worked as an accountant for Bay Area Accounting & Management ("BAAM"), and in that role served as the outside accountant for FHMC. Defendant Poole prepared all of the year-end audited financial statements for FHMC for 1998 through 2003 (Gov. Ex.'s 98-103). Defendant Poole also prepared all of the informational returns for FHMC on Form 1120-S's that were filed with the IRS (Gov. Ex.'s 1-4), covering tax years 1998, 2000, 2001 (Defendant Poole prepared, but did not sign, the 2001 return), and 2003, as well as all of the joint personal returns for Stilianos and Elizabeth Mavroulis on Form 1040's for tax years 1998 through 2003 (Gov. Ex.'s 7-12). Poole billed between $30,000 and $40,000 annually to FHMC and, although FHMC and Stilianos Mavroulis represented less than 8% of BAAM's business, they comprised one of BAAM's largest clients. Defendant Poole testified that he worked no more than seventy-five hours a year for FHMC and Stilianos Mavroulis.

Defendant Poole recommended QuickBooks software to FHMC in 1998, and he and another employee installed the program in 1998. Defendant Poole trained Stilianos and Kyriakos

7

Mavroulis on the program, and he thereafter relied on the accounting staff at FHMC to properly

characterize and book the personal expenses of the Mavroulis family.  The owner's draw account

was referred to in QuickBooks as the shareholder draw account.

Stilianos Mavroulis also started two new companies during the relevant time period:

Fidelity Promotions was incorporated on February 26, 2002; and 1012 Northpoint, Inc. was

incorporated on July 17, 2002.

## II.    Aiding and Abetting

It cannot be disputed that Stilianos Mavroulis used FHMC funds to pay for personal

expenses and other benefits in each tax year between 2000 and 2003, such as (but not necessarily

limited to) compensating his children under the guise of shareholder draws (*see* Gov. Exs. 87a-f

& 88a-f), sending a starter check to Fidelity Promotions (*see, e.g.,* Gov. Ex. 86a), investing in the

stock market through a personal E-Trade Securities account (*see, e.g.,* Gov. Exs. 84, 85), paying

for a personal trip for the family to Greece (*see* Gov. Ex. 82), and paying for school tuition for

his children (*see, e.g.,* Gov. Ex. 92).[3]  This Court credits Internal Revenue Agent Richard

Wallace's ultimate conclusion that, based on his extensive review of the evidence in this case,

substantial personal expenditures were being paid by business funds, and, based on the tax

returns and financial statements (as discussed below), there was substantial unreported income,

---

[3] Defendant Poole's theory of the case is that these expenses were not deducted as business expenses by FHMC, and, as a result, FHMC income was not improperly reduced on account of those payments.  Thus, the net income of FHMC flowed through onto Stilianos Mavroulis's personal returns, and he owed no additional taxes on those funds.  Defendant Poole's contention that there was no tax violation (let alone no criminal wrongdoing) is belied not only by Internal Revenue Agent Richard Wallace's convincing testimony, but also by the simple fact that Stilianos Mavroulis has pled guilty on the advice of his attorneys to four separate counts of filing false tax returns in violation of 26 U.S.C. § 7206(1).

resulting in substantial unpaid taxes due to the IRS in the years in question.[4]

At the time Defendant Poole prepared the 2000-03 Form 1120-S returns for FHMC and the 2000-03 Form 1040 tax returns for Stilianos and Elizabeth Mavroulis, Defendant Poole had access to FHMC's QuickBooks and knew that Stilianos Mavroulis was using FHMC funds to pay for these personal expenses and benefits. As Defendant Poole was well aware, many of these personal expenses and benefits were not booked in QuickBooks as shareholder draws (*see, e.g.,* Gov. Exs. 128b-d); instead, the expenses were buried in other categories that made detection difficult. Defendant Poole also knew that Stilianos Mavroulis was booking the paychecks that he provided to his children for their work at FHMC as shareholder draws, and that the Mavroulis children were being paid outside FHMC's payroll system.

In his role as the tax preparer for FHMC and Stilianos Mavroulis, Defendant Poole failed to properly account for the payment by FHMC of personal expenses and other benefits to Stilianos Mavroulis and his family members. As detailed in Government Exhibit 200, which was prepared by Internal Revenue Agent Richard Wallace, approximately $1.1 million of personal

---

[4] Government Exhibit 117 is a purported tax return completed by Defendant Poole that was never filed and that indicates substantially more tax due to the IRS. The investigation into Defendant Poole's conduct was triggered when this exhibit was turned over to IRS officials by an employee of FHMC. Defendant Poole has raised several issues concerning this document. Specifically, Defendant Poole has argued that there is a missing tenth page to the document admitted into evidence (although there has been no evidence as to what was contained in the allegedly missing tenth page), and that the document admitted into evidence contains a fraudulent signature. Regardless, Defendant Poole does not contest that he actually completed a tax return that was never filed. (*See* Paper No. 116 ("[The FHMC employee] manipulated Mr. Poole into preparing a 'what if' 2001 Form 1040 for Mr. and Mrs. Mavroulis, which [the FHMC employee] then used to convince the Government to initiate an investigation.").) This document demonstrates that if the Mavroulis's filed their joint Form 1040 tax return on a cash basis (and not an accrual basis), they would have owed substantially more taxes. Other than that limited purpose, this Court does not place any additional import on the document in making the findings of fact included herein.

expenses were deducted against the gross receipts of FHMC in the Form 1120-S tax returns that

were filed by FHMC in tax years 1998, 2000, 2001, and 2003, and/or prepared by Poole but were

not filed (1999 and 2002). Stilianos Mavroulis withdrew approximately another $700,000 of

FHMC funds for personal expenses that were not deducted against the gross receipts of FHMC,

but which constituted shareholder distributions that were taxable to Stilianos Mavroulis because

he lacked any basis in FHMC at the time those withdrawals were made. After accounting for

amounts reported as income on tax returns filed by Stilianos Mavroulis's children (mostly for tax

year 2003), the net total of FHMC funds used for Stilianos Mavroulis's personal purposes

between 2000 and 2003 was approximately $340,977.25 in 2000, $271,092.38 in 2001,

$475,456.63 in 2002, and $351,161.42 in 2003.

The stark differences between the financial statements (both the audited FHMC financial

statements and the personal financial statements) and tax returns prepared by Defendant Poole

strongly evidence criminal intent. Defendant Poole prepared corporate financial statements for

FHMC that, *inter alia*, indicate that Stilianos Mavroulis received $120,000 in officer's

compensation from FHMC in 2000, 2001, 2002, and 2003. Nonetheless, Defendant Poole

willfully failed to include this amount as income on the Form 1040 returns for any of the years in

question. (*Compare* Gov. Exs. 9-12 *with* Gov. Ex. 100-103.) Another example is the fact that

the personal financial statements for Stilianos and Elizabeth Mavroulis included large sums of

money in foreign bank accounts ($261,499 in 2000 and $318,400 in 2001), yet the Form 1040

returns for these years indicated that such foreign bank accounts didn't exist. (*Compare* Gov.

Exs. 10-12 *with* Gov. Ex. 105-107.)

This Court does not credit Defendant Poole's testimony that he believed that Stilianos

10

Mavroulis acquired at least $20 million of basis in FHMC because he personally guaranteed

FHMC's warehouse lines of credit in that amount.[5] In fact, this is quite clearly not the case, as

Defendant Poole knew (or, at a minimum, should have known if he were not willfully ignorant)

that Stilianos Mavroulis lacked basis in FHMC to take any shareholder distributions from FHMC

from 2000 to 2003 without declaring such distributions as capital gains on his 1040 tax returns.

Moreover, although the financial statement prepared by Defendant Poole reflected shareholder

distributions of $67,815 for 2000, $105,161 for 2001, and $155,781 for 2003, Defendant Poole

willfully failed to include as a capital gain (and therefore taxable income) any of these

shareholder distributions on Stilianos Mavroulis's Form 1040 returns for 2000, 2001, and 2003.[6]

(Gov. Exs. 9, 10, & 12.)

The E-Trade Securities account ending in number 3304 was quite clearly a personal

account of Stilianos Mavroulis, as Thomas Walsh, a manager at E-Trade Securities, testified that

an E-Trade Securities account can be held in a corporate capacity if the necessary supporting

---

[5] This Court finds that Defendant Poole was sufficiently competent (even if he was not exceptional) at his asserted profession to complete the task at hand without committing the errors that he admits he made. His incompetency defense is therefore rejected. Moreover, this Court finds unavailing Defendant Poole's argument that he did not have the requisite intent because of the complexity of the tax returns. He has argued that he spent at most seventy-five hours a year for FHMC and Stilianos Mavroulis, while Internal Revenue Agent Richard Wallace spent 4,160 hours investigating this case. This argument overlooks the fact that it takes almost no time whatsoever to act in a willfully blind manner in the preparation of tax returns, yet it can take several thousand hours, as was the case here, for a single case agent to piece together a tax fraud stretching several years and involving the use of a large corporation's funds.

[6] As to 2002, the corporate financial statement prepared by Defendant Poole did not list any amount of shareholder distributions. However, there was in fact $92,000 in transactions booked as shareholder draw in FHMC's Quick Books for that year. Defendant Poole, however, did not include this amount as a capital gain on Stilianos Mavroulis's 1040 return for 2002. (Gov. Ex. 11.)

documentation is provided. (*See* Gov. Exs. 112, 125.) Stilianos Mavroulis chose to open his account in a personal capacity. Defendant Poole knew that Stilianos Mavroulis used corporate funds of FHMC to fund his personal E-Trade account and that those funds should have been treated as distributions to Stilianos Mavroulis and reportable as capital gains on his 1999, 2000, and 2001 Form 1040 returns. Nonetheless, Defendant Poole willfully failed to report as capital gains on Stilianos Mavroulis's Form 1040 returns the following amounts of distributions related to the E-Trade account: $61,000 in 1999; $173,605.76 in 2000; and $80,000 in 2001. (Gov. Exs. 8, 9, & 10.)

Based on the above facts, as well as the evidence and testimony at trial, this Court finds beyond a reasonable doubt that Poole willfully prepared the Form 1040 returns in question for tax years 2000-03 that failed to report as taxable income funds used for personal purposes. Thus, Defendant Poole is GUILTY of willfully aiding and assisting in preparing materially false Form 1040 returns for Stilianos Mavroulis and Elizabeth Mavroulis for 2000, 2001, 2002, and 2003, as charged in Counts Six through Nine of the Indictment.[7]

### III.   Conspiracy

Unsurprisingly, the Government cannot point to any direct evidence of an actual agreement between Stilianos Mavroulis and Defendant Poole to establish a conspiracy to defraud the Internal Revenue Service. Instead, the Government argues its case circumstantially, pointing

---

[7] Defendant Poole argues summarily in his proposed findings of fact that "[t]he Government has offered no proof that Mr. Poole willfully prepared tax returns that were fraudulent or false as to a material matter." The evidence quite clearly indicates beyond a reasonable doubt that the mistakes on the tax returns were material. *See United States v. Aramony,* 88 F.3d 1369, 1384-85 (4th Cir. 1996) (stating that a misstatement is material if it could hinder the IRS in verifying the accuracy of a tax return, and that "it is clear that a finding of materiality does not depend upon the amount of the unpaid tax" (citing cases)).

to (1) its contention that Stilianos Mavroulis and Defendant Poole are "sophisticated players," (2) the fact that Stilianos Mavroulis involved Defendant Poole in all of his accounting and tax work, and (3) a consistent pattern of shoddy professional work beginning in 1998, and continuing even after they knew that the IRS initiated a criminal investigation.[8] In addition, the Government also points to correspondence between Stilianos Mavroulis and Defendant Poole as support for the alleged conspiracy.

In a memorandum dated June 26, 2005, which appears to address taxes due to the IRS, Defendant Poole wrote to Stilianos Mavroulis that "[t]he credit card spread is not as lopsided in your favor as I would have liked, but we are still only dealing with a possible additional tax over three years of approx. $36,000. . . , and we have loss carryback to help defray that. My understanding is that you must potentially owe $60K before this rises to criminal level???" (Gov. Ex. 118.) In an email discussion on November 11-13, 2005, Defendant Poole wrote to Stilianos Mavroulis that "as you know we have cut many corners along the way, consequently audit trails, which are what he is requesting, simply are non-existent." (Gov. Ex. 120.) In response, Stilianos Mavroulis stated that:

---

[8] In its proposed findings of fact, the Government extensively delineates the errors made by Stilianos Mavroulis and Defendant Poole on the Form 1120-S's and Form 1040's for tax years 1998 and 1999. Although the Indictment alleges that the alleged conspiracy began in 1998, there are no independent substantive charges associated with the errors in 1998 and 1999. Therefore, this Court discerns no reason to outline in this Memorandum Opinion the extensive evidence as to these years, apart from acknowledging that (a) the evidence in this case does, in fact, indicate that significant tax mistakes were made in 1998 and 1999, and, (b) although the mistakes in tax years 1998 and 1999 are consistent with the mistakes made in tax years 2000 through 2003, these mistakes alone are insufficient to infer an agreement to conspire. An agreement to conspire cannot be inferred solely by reason of the tax violation itself because, otherwise, every criminal tax case involving a tax preparer and taxpayer would necessarily involve a conspiracy. There must be some independent evidence indicating a meeting of the minds.

> [C]utting a corner is one thing, under-reporting [sic] is another. And
> trully [sic], I am not familiar with you cutting any corners on my
> [t]axes. I never requested something like that from you and neither
> [have] I requested that you underreport [sic] my taxes. With full
> knowledge I agree on the financials, there I knew of they were
> inflated [sic], [b]ut not on my [t]ax returns. On tax returns I relied on
> your creativity.

(*Id.*) On March 23, 2006, Defendant Poole wrote to Stilianos Mavroulis that he was "faxed . . . some additional . . . info last night – I need to review/audit that – then on to the creative part of this [*i.e.*] making sure statements reach the needed goal!" (Gov. Ex. 129.) In an email to Stilianos Mavroulis dated July 11, 2007, Defendant Poole stated in relevant part: "[A]s far as anguish is concerned, I still wake up every morning wondering when the other shoe will drop on us because of your unfortunate hire of [the FHMC employee that triggered the criminal investigation] – I have protected you throughout on this and always will, so we are pretty even on the anguish front." (Gov. Ex. 111).

Although these emails demonstrate some level of coordination between Stilianos Mavroulis and Defendant Poole, they do not necessarily establish a conspiracy. The Indictment alleges that the conspiracy took place between 1998 and October 14, 2004, so all the emails are dated well after the alleged conspiracy took place. Moreover, Stilianos Mavroulis appears to explicitly disclaim an agreement when he wrote that "I am not familiar with you cutting any corners on my [t]axes. I never requested something like that from you and neither [have] I requested that you underreport [sic] my taxes."

The evidence in this case may cumulatively demonstrate beyond a preponderance of the evidence that there was a tacit, mutual understanding between Defendant Poole and Stilianos Mavroulis to knowingly and willfully prepare Form 1040 returns that substantially underreported

the Mavroulis's taxable income.  This Court does not find, however, that the evidence demonstrates beyond a reasonable doubt that such an agreement existed.  Evidence supporting a meeting of the minds between Defendant Poole and Stilianos Mavroulis is simply not strong enough in this case for this Court to convict Defendant Poole of a conspiracy.

## CONCLUSION

This Court finds Defendant Joseph Poole GUILTY as to the aiding and assisting in the filing of false tax returns charged in Counts Six through Nine, and NOT GUILTY as to the conspiracy to defraud the United States charged in Count One.  A separate Verdict follows.

Date:  July 24, 2009

/s/ _Ric D. Bennett_

Richard D. Bennett
United States District Judge