IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH WARNER POOLE   *

  Petitioner,     *

     v.      *  Civil Action No. RDB-12-0478

UNITED STATES OF AMERICA  *
             Criminal Action No. RDB-08-0098
  Respondent.    *

* * * * * * * * * * * * *

**<u>MEMORANDUM OPINION</u>**

  Joseph Warner Poole ("Petitioner" or "Poole") has moved this Court to Vacate, Set Aside or Correct his Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 197). Poole challenges his sentence imposed on July 24, 2009, which consists of twenty-four months of imprisonment, followed by one year of supervised release to be served in home detention with electronic monitoring, and an order to pay a $10,000 fine and half the cost for the government's expert witness, $13,603.80. In this Motion, he mounts four arguments—namely, (1) that this Court committed reversible error by referring to the guilty pleas of non-testifying co-defendants during the bench trial of his case, (2) that this Court erred in applying the concept of willful blindness, (3) that the undersigned, as trial judge, failed to recuse himself, and (4) that Petitioner received ineffective assistance from his trial counsel. Specifically, Petitioner claims that his counsel was ineffective by failing to move for the undersigned's recusal and advising the Petitioner to waive his right to a jury trial.

Petitioner has also filed a Motion to Amend his Motion Vacate, Set Aside or Correct his Sentence (ECF No. 200).[1]  In his amended Motion, Petitioner renews the four arguments of his original Motion, but refines his claim of ineffective assistance of counsel.   In particular, Petitioner recites three reasons his trial counsel provided constitutionally ineffective representation: (1) that his counsel advised him to waive his right to a jury trial without also advising him that the undersigned, as trial judge, should recuse himself under Canon 3(C)(1)(a) of the Code of Conduct of United States Judges; (2) that his counsel mishandled his plea offer by failing to advise the Petitioner of the reasonableness of the Government's offer and of the possible application of the willful blindness theory; and (3) that his counsel failed to emphasize "significant issues" in his post-conviction motion for new trial.

Pending before this Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 197) and Motion to Amend the Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 200).   Also pending are Petitioner's Motion to Request that the Undersigned Recuse Himself from Presiding over the subject Motion to Vacate, Set Aside or Correct Sentence (ECF No. 201); Petitioner's Motion Pursuant to Pending 2255 Petition to be Released from Custody (ECF No. 203); Petitioner's Motion for Leave to have the Attorney William F. Renehan appear on his behalf (ECF No. 206); and Petitioner's Motion for an Evidentiary Hearing on his Motion for Recusal before another United States District Judge (ECF No. 207).   The parties' submissions have been

---

[1] For reasons explained *infra*, Petitioner's Motion to Amend (ECF No. 200) is granted and Petitioner's amended arguments are hereby addressed in conjunction with the claims set out in his original Motion to Vacate.

reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  Accordingly,
Petitioner's Motion for Leave to have Attorney William F. Renehan appear on his behalf
(ECF No. 206) is DENIED as MOOT.  For the reasons set forth below, Petitioner's
Motion to Amend (ECF No. 200) is GRANTED, and this Court will address Petitioner's
amended arguments in conjunction with those claims set out in his original Motion to
Vacate.  Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.
§ 2255 (ECF No. 197) and Petitioner's Motion to Request that the Undersigned Recuse
Himself from Presiding over the subject Motion to Vacate, Set Aside or Correct Sentence
(ECF No. 201) are DENIED.  As a result, Petitioner's Motion Pursuant to Pending 2255
Petition to be Released from Custody (ECF No. 203) and Motion for an Evidentiary
Hearing on his Motion for Recusal before another United States District Judge (ECF No.
207) are DENIED as MOOT.

## BACKGROUND AND PROCEDURAL HISTORY

During the period between January 1, 1998, and October 18, 2004, Joseph Warner
Poole ("Petitioner" or "Poole") was retained as an independent accountant for Fidelity
Home Mortgage Corporation ("FHMC").  *United States v. Poole*, RDB-08-0098, 2009 WL
2246668 at *3 (D. Md. July 24, 2009), *aff'd*, 640 F.3d 114 (4th Cir. 2011), *cert. denied*, 132 S. Ct.
255 (2011).  Poole prepared all of the informational returns for FHMC during the tax years
1998, 2000, 2001, and 2003, as well as the joint returns for Stilianos and Elizabeth Mavroulis
for the tax years 1998 through 2003.  *Id.*  Stilianos Mavroulis was the President and owner of
FHMC, while his son, Kyriakos Mavroulis, was the head of its accounting department.  *Id.*
Poole helped install QuickBooks at FHMC and trained both Stilianos and Kyriakos

3

Mavroulis on the program. *Id.* at *4. Poole knew that Stilianos Mavroulis used FHMC funds to pay for personal expenses and payments to family members and that these expenses were not recorded in QuickBooks. *Id.* Despite having this knowledge, Poole did not properly account for these expenses in the tax returns he prepared. *Id.* In total, $1,438,687.68 of FHMC funds were not accounted for as deducted against the gross receipts of FHMC. *Id.*

A grand jury indicted Stilianos Mavroulis, Kyriakos Mavroulis, and Poole on February 28, 2008. *See* Indictment, ECF No. 1. Count One charged Stilianos Mavroulis, Kyriakos Mavroulis, and Poole with conspiracy to defraud the United States, in violation of 18 U.S.C. § 371. *Id.* Counts Two, Three, Four, and Five charged only Stilianos Mavroulis with filing false tax returns in violation of 26 U.S.C. § 7206(1). *Id.* Counts Six, Seven, Eight, and Nine charged Poole with aiding and assisting in filing false tax returns, in violation of 26 U.S.C. § 7206(2). *Id.* Lastly, Count Ten charged only Kyriakos Mavroulis with filing a false tax return in violation of 26 U.S.C. § 7206(1). *Id.* Motions to sever Kyriakos Mavroulis and Poole were granted on December 1, 2008. *See* Order, ECF No. 69. Kyriakos Mavroulis eventually pled guilty to willful failure to file a tax return, in violation of 26 U.S.C. § 7203. *See* Arraignment, ECF No. 81. Stilianos Mavroulis eventually pled guilty to Count Four of the Indictment, filing of a false tax return in violation of 26 U.S.C. § 7206(1). *See* Plea Agreement, ECF No. 84. The remaining co-defendant Poole chose to proceed with trial.

Poole filed a request to waive his right to a jury trial, electing to "proceed with trial by the United States District Judge." (ECF No. 96.) The Government consented to Poole's request to waive a jury trial, after which this Court granted it. (ECF Nos. 97-98.) After a

bench trial, this Court determined that, due to the discrepancies between the financial statements and tax returns, Poole knew or should have known that Stilianos Mavroulis, as President and owner of FHMC, was not disclosing the expenses. *Id.* at *5. At the close of the trial, the Court found Poole guilty of willfully aiding and assisting in preparing materially false tax returns. *Id.* at *7. The Court found no agreement between Stilianos Mavroulis and Poole, and thus Poole was found not guilty as to conspiracy to defraud the United States. *Id.*

Poole was sentenced by this Court on the four aiding and abetting counts to four concurrent sentences of twenty-four months and one year of supervised release, charged a fine of $10,000.00, and assessed a fee of $400.00. J. in a Criminal Case at 2-5, ECF No. 158. He was also ordered to pay $13,603.80, half the cost expended by the Government to retain its expert witness. Poole appealed his conviction, arguing that this Court committed reversible error by relying on the Mavroulises' guilty pleas to determine Poole's guilt, that the evidence presented by the Government was insufficient to sustain the conviction, and that the testimony of the Government expert was objectively flawed. On May 11, 2011, the United States Court of Appeals for the Fourth Circuit rejected all of Poole's contentions and affirmed his conviction. *United States v. Poole*, 640 F.3d 114 (4th Cir. 2011), *cert. denied*, 132 S. Ct. 255 (2011). Poole sought a rehearing *en banc*, but that request was denied. (ECF No. 92.) The Supreme Court denied Poole's petition for *certiorari* on October 3, 2011. *Poole v. United States*, 132 S. Ct. 255 (2011).

On February 15, 2012, Poole filed the pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C § 2255 (ECF No. 197). Thereafter, on May 14, 2012, Poole filed a Motion to Amend the Motion to Vacate, Set Aside or Correct Sentence (ECF

No. 200-1).   Additionally, Poole filed a Motion to Request that the Undersigned Recuse Himself from Presiding over the subject Motion to Vacate, Set Aside or Correct Sentence (ECF No. 201) and a Motion Pursuant to Pending 2255 Petition to be Released from Custody (ECF No. 203).   Finally, he filed a Motion for Leave to have Attorney William F. Renehan appear on his behalf (ECF No. 206) and a Motion for an Evidentiary Hearing on his Motion for Recusal before another United States District Judge (ECF No. 207).

## STANDARD OF REVIEW

### I.      Motion for Recusal (ECF No. 201)

A motion for recusal is construed against the affiant because "a judge is presumed to be impartial." *Molinaro v. Watkins-Johnson CEI Div.*, 359 F. Supp. 474, 476 (D. Md. 1973).   A party moving to recuse under 28 U.S.C. § 144 must file a "timely and sufficient" affidavit showing that the "judge before whom the matter is pending has a personal bias or prejudice" toward one of the parties.   28 U.S.C. § 144 (2006).   A motion to recuse is timely if it is filed "at the first opportunity after discovery of the facts tending to prove disqualification." *Sine v. Local No. 992 Int'l Bhd. of Teamsters*, 882 F.2d 913, 915 (4th Cir. 1989) (citing *Duffield v. Charleston Area Med. Ctr.*, 503 F.2d 512, 515 (4th Cir. 1974); *Chafin v. United States*, 5 F.2d 592, 595 (4th Cir. 1925), *cert. denied*, 269 U.S. 552 (1925)).

To be legally sufficient, the judge's alleged bias must come from an "extrajudicial source other than what the judge has learned or experienced from [his] participation in the case." *Sine*, 882 F.2d at 914 (citing *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir. 1984); *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 672 (4th Cir. 1982); *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)).   A judge's opinions in earlier proceedings "almost never

constitute a valid basis for a bias or partiality motion . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). This Court has recently held that a motion to recuse must provide facts that could prove impropriety and cannot merely be based on a party's unhappiness in the outcome of the case. See *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, CIV.A. DKC-10-3517, 2011 WL 4368007 at *2 (D. Md. Sept. 16, 2011).

## II.     Ineffective Assistance of Counsel

An ineffective assistance of counsel claim requires that a petitioner satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In making this determination, courts must observe a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. Actions that fall below an objective standard of reasonableness are "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The second, or "prejudice," prong requires that defendant demonstrate that his counsel's errors deprived him of a fair trial. *Id.*

The United States Court of Appeals for the Fourth Circuit has previously noted that "[t]he defendant bears the burden of proving the first prong under the Strickland test," and unless this burden is met, "a reviewing court does not need to consider the second prong." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1297 (4th Cir. 1992). The Court of Appeals has also

noted that the mere possibility of a different trial result does not satisfy the burden placed on the defendant. *See Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986). As a result, ineffective assistance of counsel claims may be disposed of solely based on a deficient showing of prejudice. *See Strickland*, 466 U.S. at 697.

<u>ANALYSIS</u>

Preliminarily, this Court addresses the Petitioner's Motion to Amend his Motion to Vacate (ECF No. 200). The Government has not opposed this Motion to Amend; in fact, the Government recommends that it be granted. *See* Gov't's Omnibus Resp. 6, ECF No. 204. Moreover, Rule 15(a) of the Federal Rules of Civil Procedure instructs that a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In light of the Government's agreement to the Petitioner's Motion to Amend, as well as the fact that Petitioner filed it well within the one-year statute of limitations for filing a motion to vacate, this Court GRANTS Petitioner's Motion to Amend (ECF No. 200). The amendments that Petitioner requests (ECF No. 200-1) are hereby considered in conjunction with the arguments asserted in his original Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 200).

In turn, this Court addresses Petitioner's Motion to Request that the Undersigned Recuse Himself from Presiding over the subject Motion to Vacate, Set Aside or Correct Sentence ("Motion for Recusal") (ECF No. 201) and his Motion to Vacate (ECF No. 197). Petitioner's Motion to Vacate sets out four grounds for vacating his sentence pursuant to 28 U.S.C. § 2255. First, Petitioner claims that this Court committed reversible error by referring to the guilty pleas of non-testifying co-defendants, Stilianos and Kyriakos

Mavroulis.  Second, Petitioner alleges that this Court erred in its application of the willful blindness standard.  Third, he alleges that the undersigned should have recused himself in accordance with the Code of Conduct for United States Judges.  Fourth, he asserts that he received ineffective assistance of counsel.  Both Petitioner's Motion for Recusal (ECF No. 201) and Motion to Vacate (ECF No. 197) are DENIED for the reasons that follow.  Additionally, Petitioner's Motion Pursuant to Pending 2255 Petition to be Released from Custody (ECF No. 203), Motion for Leave to have Attorney William F. Renehan appear on his behalf (ECF No. 206), and Motion for an Evidentiary Hearing on his Motion for Recusal before another United States District Judge (ECF No. 207) are DENIED as MOOT.

## I.      Motion for Recusal (ECF No. 201)

Petitioner requests that the undersigned recuse himself from resolving the subject Motion to Vacate pursuant to Canon 3(C)(1)(a) of the Code of Conduct for United States Judges.  He asserts that since the undersigned's "actions and 'impressions' are at the core of the motion(s)" filed, it is a reasonable request to have another district judge preside over his Motion to Vacate.  Mot. for Recusal, ECF No. 201.  Petitioner appears to argue that the undersigned's impartiality is thrown into question because the pending Motion to Vacate also contains arguments for the undersigned's recusal.  *Id.*  On this ground, Petitioner fails to make out a case for recusal.

Canon 3(C)(1)(a) requires a judge to disqualify himself in a proceeding in which he or she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings."  Canon 3(C)(1)(a) (2009).  Under 28 U.S.C. § 455(a), a judge shall disqualify himself in a proceeding "in which his impartiality might

reasonably be questioned." Petitioner has not shown that the undersigned held personal bias or prejudice, nor has he provided a reason for which the undersigned's impartiality might reasonably be questioned. That the undersigned was involved in the underlying trial does not compel his recusal at the collateral review stage. Quite the opposite, the judge who handles a case at the trial stage normally presides over that case on collateral review. *See, e.g.,* *Liteky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."); *United States v. Campbell*, 59 F. App'x 50, 51-52 (6th Cir. 2003) (noting that prior "[j]udicial rulings will almost never serve as a valid basis for recusal"); *United States v. Blue Thunder*, 604 F.2d 550, 557 (8th Cir. 1979) ("In terms of judicial efficiency, the trial judge was the logical person to preside over that hearing; and we find no abuse of discretion in his decision not to recuse himself. The defendant has not shown that the judge was in any way biased or prejudiced against him.").

In order to make out a claim for a recusal under 28 U.S.C. § 144, a judge's alleged bias must come from an "extrajudicial source other than what the judge has learned or experienced from [his] participation in the case." *Sine*, 882 F.2d at 914 (citing *Shaw*, 733 F.2d at 308; *Fitzgerald*, 691 F.2d at 672; *Grinnell Corp.*, 384 U.S. at 583). In this case, the information that Petitioner points to as evidence of bias—the guilty pleas of Stilianos and Kyriakos Mavroulis—was knowledge that the undersigned acquired through his participation in this case. Indeed, the undersigned, as presiding judge of this case, was necessarily made award of the co-defendants' guilty pleas because they were matters of the record. Thus Petitioner's argument cannot succeed on the ground of an alleged bias arising out of an extrajudicial source.

Only in rare circumstances will a judge's prior involvement in a case warrant recusal. The Supreme Court in *Liteky* explained that recusal on this basis should occur only where "[o]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" show "a deep-seated favoritism or antagonism that would make fair judgment impossible."  510 U.S. at 555.  Petitioner has not marshaled any evidence of a deep-seated favoritism or antagonism in the undersigned's handling of this case that would justify recusal at this stage.  In light of the fact that this Court found Petitioner not guilty of conspiracy to defraud the United States, it would be a difficult task making out such a claim of antagonism.  Petitioner suggests, however, that because he asserts similar recusal claims pertaining to the trial stage of his case in his Motion to Vacate, the undersigned cannot be impartial in ruling on that motion.  This argument gains no traction, however, because Petitioner's burden is a steep one.  Indeed, a motion for recusal is construed against the affiant because "a judge is presumed to be impartial." *Molinaro*, 359 F. Supp. at 476.  Petitioner's desire that the undersigned recuse himself now, coupled with his concern that the undersigned should have disqualified himself in the trial proceedings, does not establish a deep-seated favoritism or antagonism on the undersigned's part in ruling on his pending Motion to Vacate.  For these reasons, Petitioner's Motion for Recusal (ECF No. 201) is DENIED.

## II.    Petitioner's Motion to Vacate (ECF No. 197)

Petitioner mounts four claims in his Motion to Vacate (ECF No. 197), which this Court addresses along with Petitioner's amendments to this Motion (ECF No. 200). Specifically, Petitioner argues (1) that this Court committed reversible error by referring to

the guilty pleas of non-testifying co-defendants, Stilianos and Kyriakos Mavroulis, during the bench trial of his case, (2) that this Court erred in applying the willful blindness standard, (3) that the undersigned, as trial judge, failed to recuse himself, and (4) that Petitioner received ineffective assistance from his trial counsel.  This Court confronts each argument in turn and finds that none has merit.

A.  <u>Petitioner's Claim that This Court's References to the Mavroulises' Guilty Pleas Constitute Reversible Error</u>

In Petitioner's Motion to Vacate, he first asserts this Court's references to the guilty pleas entered by Stilianos and Kyriakos Mavroulis constitute reversible error.  Petitioner acknowledges that the Court of Appeals for the Fourth Circuit determined that the Court's references to the Mavroulis guilty pleas were harmless beyond a reasonable doubt.  Indeed, the Court of Appeals explained that it agreed with this Court that the evidence in Petitioner's case was "overwhelming."  *Poole*, 640 F.3d at 120.  The Court of Appeals also pointed out that this Court had explained that its judgment rested solely on the evidence presented at trial, and that "when a district court finds a defendant guilty after a bench trial, appellate courts generally presume that the conviction rested only on admissible evidence."  *Id.*  In this case, though the Court was found to have considered matters not in evidence at trial, the appellate court determined that the overwhelming evidence in the record—and not this Court's references to the Mavroulises' guilty pleas—contributed to the verdict.  *Id.* Nonetheless, Petitioner argues that the Court of Appeals was "wrong" in its determination. Mot. to Vacate ¶ 14.

Because Petitioner argued and lost this issue on appeal, he may not collaterally attack the same issue in the pending Motion to Vacate.  *See United States v. Walker*, 299 F. App'x

273, 276 (4th Cir. 2008) ("Absent a change in the law, a prisoner cannot relitigate in collateral proceedings an issue rejected on direct appeal."); *United States v. Roane*, 378 F.3d 382, 396 n.7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues."); *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1975) (per curiam) (stating that a petitioner "will not be allowed to recast, under the guise of collateral attack, questions fully considered [on direct appeal]").    Considering that there has been no change in the law, Petitioner may not relitigate the issue of this Court's references to the Mavroulises' guilty pleas.  For this reason, Petitioner's Motion to Vacate on this ground fails.

B.  <u>Petitioner's Claim that This Court Erred in its Application of the Willful Blindness Standard</u>

Petitioner's second ground for vacating his sentence concerns the application of the willful blindness standard.  Petitioner asserts that this Court improperly shifted the burden of proof on to the Petitioner when it determined that he was willfully blind, thereby establishing the guilty knowledge element of the crime of aiding and assisting in the filing of false tax returns in violation of 26 U.S.C. § 7206(2).  Mot. to Vacate ¶ 14.

On this ground, too, the Fourth Circuit Court of Appeals has already made a determination.   As the Fourth Circuit explained in its opinion affirming this Court's judgment, "in a criminal tax prosecution . . . 'willful blindness' constitutes proof of [the defendant's] subjective state of mind, thereby satisfying the scienter requirement of knowledge." *Poole*, 640 F.3d at 121; *see also United States v. Dantzler*, 45 F. App'x 259, 261 (4th Cir. 2002).  The Court of Appeals went on to state that "[t]he rationale supporting the

principle of 'willful blindness' is that intentional ignorance and actual knowledge are equally culpable under the law." *Poole*, 640 F.3d at 122.   Moreover, the Court reasoned that an inference supporting the defendant's subjective awareness is enough for a trier of fact to find that the defendant exhibited willful blindness.   *Id.*   As the Government points out in its Omnibus Response, the Fourth Circuit found that there was sufficient evidence in this case to support the Petitioner's conviction and that a reasonable trier of fact could have found Petitioner to be willfully blind, "purposefully 'clos[ing] his eyes to' large accounting discrepancies."   *Id.* at 123.   Petitioner offers no reason to call these conclusions into question.   Consequently, there is no merit to Petitioner's argument that this Court incorrectly applied the willful blindness standard, and Petitioner may not relitigate the issue at this stage of review.

Relatedly, Petitioner argues that an application of the willful blindness standard to his case relieved the Government of its burden to prove that he had guilty knowledge regarding the fraudulent tax returns.   This argument likewise lacks merit.   In its review of Petitioner's case, the Court of Appeals for the Fourth Circuit explained that the Government had been required to prove that "Poole willfully aided, assisted, or otherwise caused the preparation of a tax return that was fraudulent or false with regard to a material matter."   *Id.* at 116.   The appellate court found that the Government had met that burden.   *See id.* at 122-123. Considering the weighty evidence in support of Petitioner's conviction, he fails here, as he did on appeal, to show why the application of the willful blindness standard was improper in this case.

C.  Petitioner's Claim that the Undersigned Failed to Recuse Himself at Trial

In Petitioner's third ground of his Motion to Vacate, he asserts that applying *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), to this case, the undersigned erred when he failed to disqualify himself in the trial proceeding.  Mot. to Vacate ¶ 14.  Petitioner does not attempt to draw a parallel between the facts of *Caperton* and the facts of this case; he simply cites the case without context.  This Court summarizes the "extraordinary situation" in *Caperton*, 556 U.S. at 887, in order to highlight its lack of relevance to the case at hand.

In *Caperton*, the Supreme Court confronted the following facts: A jury in West Virginia state court found a coal company, A.T. Massey Coal Co. ("Massey"), liable for fraudulent representation, concealment, and tortious interference with contractual relations. *Id.* at 872.  The jury awarded the plaintiffs $50 million in compensatory and punitive damages.  *Id.*  Before the case was appealed, the chairman of Massey contributed significant funds—the state statutory maximum of $1,000 to a political candidate, plus $2.5 million to a political organization and $500,000 in direct mailings and television and newspaper advertisements[2]—in support of the Brent Benjamin ("Benjamin") campaign.   Benjamin sought to replace one of the justices of the Supreme Court of Appeals of West Virginia, the state's highest appellate court, and Massey's chairman knew that court would be considering Massey's case on appeal.  *Id.* at 873.  After Benjamin won the election and before Massey's appeal, the plaintiffs moved to disqualify Justice Benjamin "based on the conflict caused by Blankenship's campaign involvement."  *Id.* at 874.  Justice Benjamin denied that motion,

_____

[2] Reviewing the facts of *Caperton*, the Supreme Court noted that the Massey chairman's political contributions of $3 million "were more than the total amount spent by all other Benjamin supporters and three times the amount spent by Benjamin's own committee."  556 U.S. at 873.

finding that there was no objective information demonstrating that he harbored a bias for or against a particular litigant. *Id.*

Massey then appealed its case, and the Supreme Court of Appeals reversed the $50 million verdict against Massey. *Id.* Justice Benjamin joined the majority opinion reversing the jury verdict. Justice Benjamin was asked to recuse himself on two further occasions but declined. *Id.* at 874-75. After a rehearing on appeal, during which period of time a public opinion poll indicated that over 67% of West Virginia residents doubted Justice Benjamin's impartiality, the state's highest appellate court, with Justice Benjamin acting as chief justice, decided again in favor of Massey. *Id.*

Justice Benjamin filed a concurring opinion in the final appellate judgment, defending his decision not to recuse himself. *Id.* at 876. The United States Supreme Court granted certiorari and reversed the appellate court decision, holding that Justice Benjamin should have recused himself as a matter of due process. *Id.* Justice Kennedy, writing for the majority, explained that due process, in certain circumstances, requires recusal not only of judges harboring actual biases but also of those judges "who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." *Id.* at 886 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)). While there was no allegation of a quid pro quo relationship between Massey and Justice Benjamin, Justice Kennedy reasoned that "the fact remains that [the Massey chairman's] extraordinary contributions were made at a time when he had a vested stake in the outcome." *Id.* Justice Kennedy concluded that there was an "objective risk of actual bias" requiring Justice Benjamin's recusal because, "[j]ust as no man is allowed to be a judge in his own cause, similar fears of bias can arise

when—without the consent of the other parties—a man chooses the judge in his own cause." *Id.*

Petitioner marshals no argument for considering *Caperton* controlling in this case. Considering the quite extraordinary facts of *Caperton*, Petitioner's argument gains no traction. There simply is no way to construe the facts of this case to suggest that the undersigned's presiding over the proceedings in which the Mavroulises pled guilty created an "objective risk of actual bias" warranting recusal. *Caperton*, 556 U.S. at 886. As this Court has already discussed, Petitioner fails to allege an "extrajudicial source other than what the judge has learned or experienced from [his] participation in the case," needed to make out a claim for recusal. *Sine*, 882 F.2d at 914 (citing *Shaw*, 733 F.2d at 308; *Fitzgerald*, 691 F.2d at 672; *Grinnell Corp.*, 384 U.S. at 583). The guilty pleas of Petitioner's co-defendants were matters of the record that the undersigned was necessarily privy to as the presiding judge in this case. Moreover, the undersigned harbored no bias against either party, and Petitioner makes no contention to the contrary. Although *Caperton* makes clear that in certain situations a judge harboring no biases must nevertheless recuse himself, this case, in contrast to *Caperton*, did not involve any risk of impropriety or bias. The undersigned properly presided over this case in which Petitioner's co-defendants pled guilty while Petitioner himself chose to proceed to a bench trial. At bottom, Petitioner's reliance on *Caperton* falls flat.

Petitioner's Motion to Amend (ECF No. 200) suggests, however, that the basis for his recusal argument is that the undersigned, by presiding over the cases of both Stilianos and Kyriakos Mavroulis, became "exposed to the relevant facts of the case." Mot. to Amend 1. When the undersigned continued to preside over Petitioner's case, Petitioner's

argument follows, the undersigned violated Canon 3(C)(1)(a) of the Code of Conduct of United States Judges.[3]  Yet just as with his separate Motion for Recusal (ECF No. 201), Petitioner fails to make a showing of personal bias or prejudice that would implicate Canon 3(C)(1)(a).

At the outset, this Court notes that Canon 3(C)(1)(a) speaks only to a judge's personal knowledge of "disputed evidentiary facts."  Canon 3(C)(1)(a) (2009).  Petitioner's argument for recusal appears to hinge on the Court's knowledge that the Mavroulises' tax returns were false.  While Petitioner's own mental state was at issue in his trial, the falsity of the tax returns was never in dispute.  Accordingly, Petitioner's argument based on Canon 3(C)(1)(a) is likely misplaced.  For the sake of argument, however, this Court assumes that Petitioner has implicated disputed evidentiary facts in his argument for recusal so as to address the merits of the claim.

As this Court explained in Section I of this Memorandum Opinion, the Supreme Court has held that earlier-formed opinions "almost never constitute a valid basis" for bias, unless they show "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.  Petitioner makes out no claim for such a bias, aside from referring to the extraordinary facts of *Caperton*—facts that do not resemble this case.

Moreover, the Court of Appeals for the Fourth Circuit indicated that the evidence in Petitioner's case was "overwhelming" and that the undersigned had explained, in post-trial proceedings, that its judgment rested solely on that evidence. *Poole*, 640 F.3d at 120.  The

---

[3] Canon 3(C)(1)(a) requires a judge to disqualify himself in a proceeding in which he or she "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings." Canon 3(C)(1)(a) (2009).

appellate court found that the overwhelming evidence in the record—and not this Court's references to the Mavroulises' guilty pleas—contributed to the verdict. *Id.* These findings by the Court of Appeals support the conclusion that there has been no showing of impropriety or partiality that would warrant recusal.

It is worth noting, too, that "judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346 (1981). In the Fourth Circuit, a trial judge is presumed to rely "only on the evidence that properly was admitted." *See Poole*, 640 F.3d at 120 (citing *United States v. Smith*, 390 F.2d 420, 422 n.2 (4th Cir. 1968)). Addressing a similar argument to that which Petitioner advances, the Fourth Circuit in *Wyatt v. United States*, 591 F.2d 260 (4th Cir. 1979), stated that "[i]t is not a cause for disqualification . . . that a judge has acquired in his judicial capacity special knowledge of facts relevant to a case before him." *Id.* at 266 (citing *United States v. Mathis*, 550 F.2d 180 (4th Cir. 1976)); *see also United States v. Parker*, 742 F.2d 127, 128 (4th Cir. 1984) (holding that a judge's "personal knowledge of disputed evidentiary facts" did not justify recusal because his "familiarity with the facts stemmed entirely from his judicial conduct in presiding over earlier proceedings"); *United States v. Schreiber*, 599 F.2d 534, 535 (3d Cir. 1979) (acknowledging the "precept that a judge need not withdraw from a case merely because he or she has presided in a related or companion case").

The decision in *Wyatt* is especially relevant, because the Court of Appeals found in that case that a court need not reconfirm the validity of a defendant's jury trial waiver after the court had already presided over the trial of the defendant's co-conspirator. 591 F.2d 266-67. Similar to *Wyatt*, this Court's presiding over the guilty pleas of Petitioner's co-

defendants is no cause for disqualification.  The facts the undersigned learned by presiding over those guilty pleas amounts to the sort of "special knowledge" acquired in a judge's judicial capacity that does not warrant recusal.  *Id.* at 266.  The decision in *Wyatt*, as well as in other consistent Fourth Circuit cases, bolsters the conclusion that Petitioner has provided no reason for doubting the undersigned's impartiality in this case.  For all of these reasons, Petitioner's Motion to Vacate on this ground fails.

### D.  Petitioner's Claims of Ineffective Assistance of Counsel

Finally, Petitioner alleges that Counsel rendered ineffective assistance in three ways. First, Petitioner argues that his counsel wrongly advised him to waive his right to a jury trial without also advising him that the undersigned, as trial judge, should recuse himself under Canon 3(C)(1)(a) of the Code of Conduct of United States Judges.  Second, Petitioner claims that his counsel mishandled his plea offer by failing to advise the Petitioner of the reasonableness of the Government's offer and of the possible application of the willful blindness theory.  Third, Petitioner complains that his counsel failed to emphasize "significant issues" in his motion for new trial.  Applying the *Strickland v. Washington* two-factor test, Petitioner's claims of ineffective assistance of counsel fail.

#### 1.  *Counsel's Advice Regarding Waiver of Jury Trial*

Petitioner argues that his counsel rendered ineffective assistance by advising him to waive his right to a jury trial without also advising him that the undersigned should recuse himself from presiding over the bench trial.  Petitioner's claim fails to make out each prong—the deficient performance prong and the prejudice prong—of the *Strickland* test.  It is worth repeating here that a court's review of an attorney's performance "must be highly

deferential." *Strickland*, 466 U.S. at 689. Indeed, there is a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance" and is based on "sound trial strategy." *Id.* A defendant pursuing a *Strickland* claim must overcome this presumption.

Petitioner fails to cite a single case in support of his argument that his counsel's performance was deficient. His claim is supported only by his statement that this error was one "that should have been so well known to such learned counsel." Mot. to Amend 1. As the Government points out in its Response, several post-conviction cases concerning waivers of jury trials run counter to Petitioner's argument. Gov't Omnibus Resp. at 8, ECF No. 199. The Court of Appeals for the Fifth Circuit, in its review of a claim similar to Petitioner's, reasoned that a defense attorney's decision "to recommend a bench trial to his client is the type of act for which *Strickland* requires that judicial scrutiny be highly deferential." *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir. 1989). Other courts have found no constitutional error where counsel, for strategic reasons, advised his client to waive his right to a jury trial. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180 (10th Cir. 2001) (en banc) (explaining that an attorney's decision to waive a jury trial is "a classic example of a strategic trial judgment" requiring deferential judicial review); *Carter v. Holt*, 817 F.2d 699, 701 (11th Cir. 1987) (reasoning that counsel's decision to waive right to a jury trial would amount to ineffective assistance of counsel "only if it was so unreasonable that no competent attorney would have chosen it"); *United States v. Ortiz Oliveras*, 717 F.2d 1 (1st Cir. 1983) (finding

against petitioner on *Strickland* claim because counsel's advice to opt for bench trial was based on tactical decision).

It is clear that a reasonable defense attorney in this case could have concluded that a bench trial provided Petitioner a better chance of a favorable outcome.  As judicial review of this sort of tactical decision is highly deferential, Petitioner's claim fails to overcome the strong presumption that his counsel's performance was reasonable.  Accordingly, he cannot show a constitutional deficiency in his counsel's advice to waive his right to a jury trial.[4]

Petitioner's argument that counsel rendered ineffective assistance in failing to advise him of the application of Canon 3(C)(1)(a) of the Code of Conduct of United States Judges is equally unavailing.  As this Court explained in Section II.C of this Memorandum Opinion, Canon 3(C)(1)(a) did not compel the undersigned's recusal in this case.  Petitioner's claim boils down to a concern that the undersigned's knowledge of the Mavroulises' guilty pleas affected his ability to remain impartial when he presided over Petitioner's bench trial.  The Supreme Court in *Liteky* reasoned that earlier-formed opinions "almost never constitute a valid basis" for recusal, unless they show "a deep-seated favoritism or antagonism that would make fair judgment impossible."  510 U.S. at 555.  Petitioner has made no such showing of a deep-seated favoritism or antagonism.  Moreover, Fourth Circuit case law bolsters the conclusion that counsel would have had no basis on which to move for the undersigned's recusal.  *See, e.g., Parker*, 742 F.2d 127; *Wyatt*, 591 F.2d 260.  Given Canon

---

[4] It should also be noted that there is no dispute that Petitioner's waiver of his right to a jury trial was voluntary and intelligent.  Petitioner signed a waiver form in which he acknowledged that by waiving his right he was relinquishing his opportunity to be tried by a jury.  *See* Waiver of Jury Trial, ECF No. 96.  Petitioner also acknowledged that with a jury trial his counsel would have been permitted to question and move to strike prospective jurors and the verdict would have had to be unanimous.  *See id.*

3(C)(1)(a)'s lack of bearing in this case, counsel's failure to advise Petitioner of this canon raises no *Strickland* concerns.

Even if Petitioner could show that his counsel was inadequate in advising him to waive his jury trial right and in failing to advise him regarding Canon 3(C)(1)(a), Petitioner misses the mark in alleging prejudice.   Given the evidence against Petitioner that was presented at trial—evidence which both this Court and the Court of Appeals for the Fourth Circuit found to be overwhelming—Petitioner cannot show that, had his case been presented to a jury, the outcome would have been different.  *See, e.g., Correll v. Thompson*, 63 F.3d 1279, 1292 (4th Cir. 1995) (finding that where the evidence against a defendant was overwhelming, there was "no doubt that had the case been presented to a jury the same result would have obtained").  Thus, Petitioner's *Strickland* claim on this ground falls flat.

### 2.  *Counsel's Handling of the Government's Plea Offer*

Second, Petitioner argues that his counsel performed ineffectively by failing to provide him "a clear understanding of the reasonableness of the government's offer" and failing to effectively warn him of the potential application of the willful blindness standard. Mot. to Amend 1.  Petitioner elaborates on this claim, stating that his trial counsel assured him he "had an excellent chance of winning" and did not explain that under a willful blindness theory "could have known" equates to "should have known."  *Id.*  On this point, too, Petitioner fails to make out the requisite prongs of *Strickland v. Washington*.

First, Petitioner does not demonstrate how counsel's performance was deficient.  He only states that counsel assured him that he could win and that this Court would be able to understand the complicated elements of the case.  In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012),

one of the Supreme Court's most recent cases applying *Strickland v. Washington* to the context of plea negotiations, there was no question that counsel's advice was patently erroneous with regard to the guilty plea.  The case in *Lafler* concerned a defendant who had fired at an individual's head and missed, and then continued firing as the individual fled, shooting her in the buttock, hip, and abdomen.  *Id.* at 1383.  The defendant was charged with, among other crimes, assault with the intent to murder.  *Id.*  He rejected a plea deal on his attorney's advice that the prosecution would be unable to establish intent to murder, and later challenged that advice under *Strickland v. Washington*, 466 U.S. 668.[5]

In this case, Petitioner makes no such showing of constitutionally deficient advice. Counsel's alleged assurances about the chance that Petitioner might be acquitted are not unfounded, considering that this Court acquitted Petitioner of the conspiracy charges against him.  And had counsel informed the Petitioner that a level of knowledge described as "could have known" would be enough to find him guilty of the charges against him, counsel's advice would have been flawed.  To impute knowledge to the Petitioner under a willful blindness theory, the fact finder had to determine that Petitioner "purposely closed his eyes to avoid knowing what was taking place around him."  *United States v. Ruhe*, 191 F.3d 376, 384-85 (4th Cir. 1999).  For these reasons, Petitioner fails to show ineffective assistance of counsel with regard to the handling of his plea offer.

Even assuming Petitioner could make out such a claim, he cannot show that, but for his counsel's ineffective assistance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  In the context of a rejected plea offer, Petitioner must show that

---

[5] In *Lafler*, the parties agreed that the defense attorney's advice was deficient.  132 S. Ct. at 1384.

"there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385.  Given Petitioner's continued assertions that he did not commit the crime of willful aiding and assisting in the preparation of materially false tax returns, *see* Pet'r's Reply 2, ECF No. 202 ("I did not know that my client was cheating and I had no reason to suspect that he was."); Mot. to Amend 2 ("I was NOT willfully blind."), there is no reason to believe that Petitioner would have accepted the plea agreement even if counsel had advised him differently.  *See Berry v. United States*, Civ. Action No. 4:11cv145, 2012 WL 3329622 (E.D. Va. July 29, 2012) (finding, in the context of a petitioner who had maintained his innocence at trial, that "[a]s multiple courts have recognized, 'after the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer'"); *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("[A]fter the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." (citing *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986))).

Moreover, Petitioner is unable to show that he would have received a less severe sentence had he agreed to plead guilty.  The Government in its plea letter recommended a sentence within a range of 30-37 months.  Gov't's Omnibus Resp. 24.  After a bench trial,

this Court sentenced Petitioner to twenty-four months of imprisonment.   Given that Petitioner received a shorter sentence than the term proposed by the Government in its plea negotiations, Petitioner is unable to make any showing of prejudice, and his *Strickland* claim fails.

### 3.   *Counsel's Preparation of the Petitioner's Motion for New Trial*

Finally, Petitioner argues that his counsel performed ineffectively by failing to emphasize "significant issues" in his post-conviction motion for new trial.   Mot. to Amend 2.   In particular, Petitioner argues that his counsel failed to address this Court's misunderstandings of several items—namely, the difference in "basis" rules between partnerships and S corporations; the allegedly exculpatory testimony of one defense witness; the fact that informational tax returns were done on a cash basis while audited financial statements were prepared on an accrual basis; and finally that Petitioner properly dealt with E-Trade and foreign bank account issues.   This final *Strickland* claim is easily dispatched.

Petitioner fails to show that his counsel's performance was unreasonable.   Judicial review of an attorney's tactical decisions is highly deferential.   Indeed, there is a strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance" and is based on "sound trial strategy." *Strickland*, 466 U.S. at 689.   In light of this strong presumption, this Court finds that counsel's arguments in Petitioner's motion for new trial were well within the wide range of reasonable professional assistance at this stage.   The motion contained well-reasoned arguments that this Court, as well as the Court of Appeals for the Fourth Circuit, carefully considered before denying.   Thus, counsel's preparation of the motion for new trial constituted reasonable trial strategy.

Additionally, Petitioner cannot prove prejudice.   Considering the overwhelming evidence against Petitioner, his claim of ineffective assistance at the post-trial motions stage misses the mark.   There is no reason to believe that, in light of the evidence against Petitioner, a motion for new trial containing a few more arguments would have changed the outcome.   Petitioner's final argument for ineffective assistance of counsel therefore fails.

CONCLUSION

For the foregoing reasons, Petitioner's Motion to Amend his Motion to Vacate (ECF No. 200) is GRANTED and his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 197) is DENIED.   Petitioner's Motion to Request that Trial Judge Recuse Himself from Presiding over the subject Motion to Vacate, Set Aside or Correct Sentence (ECF No. 201) is DENIED.   Consequently, as these Motions have been denied, Petitioner's Motion Pursuant to Pending 2255 Petition to be Released from Custody (ECF No. 203), Motion for Leave to have Attorney William F. Renehan appear on his behalf (ECF No. 206), and Motion for an Evidentiary Hearing on his Motion for Recusal before another United States District Judge (ECF No. 207) are DENIED as MOOT.

A certificate of appealability shall not issue absent "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253 (c)(2) (2000).   A petitioner satisfies this standard by demonstrating that reasonable jurists would find that an assessment of the constitutional claims is debatable and that any dispositive procedural ruling dismissing such claims is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001).   Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED as to him.

A separate order follows.


Dated:  February 15, 2013                    _____/S/_____
                                             Richard D. Bennett
                                             United States District Judge